UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

            Plaintiff,

v.

Joshua M. Proudfoot,

            Defendant.

**MEMORANDUM OPINION AND ORDER**
Criminal No. 14-192 ADM/LIB
Civil No. 16-200 ADM

---

Benjamin Bejar, Esq., Assistant United States Attorney, Minneapolis, MN, on behalf of Plaintiff.

Joshua M. Proudfoot, pro se.

---

## I. INTRODUCTION

This matter is before the undersigned United States District Judge pursuant to Joshua M. Proudfoot's Motion to Vacate under 28 U.S.C. § 2255 ("2255 Motion") [Criminal Docket No. 75].[1] In his motion, Proudfoot alleges a due process violation for being erroneously classified as a career-offender under the now unconstitutional residual clause of the career-offender's crime of violence definition. Relatedly, Proudfoot also asserts an ineffective assistance of counsel claim due to the failure of his trial counsel to sufficiently investigate and challenge the career-offender determination. For the reasons set forth below, Proudfoot's motion is denied.

## II. BACKGROUND

In May 2014, Proudfoot was arrested following a high-speed chase in Stevens County, Minnesota. Revised Presentence Report ("PSR") ¶¶ 7–8. During the chase, Proudfoot was observed throwing several clear baggies out the window. Id. ¶ 9. Fourteen baggies containing

---

[1] All docket citations hereinafter are to the Criminal Docket.

methamphetamine and other narcotics paraphernalia were later recovered.  Id.  Officers also observed pills, a live round of .38-caliber ammunition, and keys to a Chrysler vehicle.  Id. ¶ 8.  While in custody, Proudfoot phoned his father and asked him to remove his car from his residence and to pack up all of his "stuff."  Id. ¶ 10.   Police executed a search warrant at Proudfoot's father's house and recovered two bags belonging to Proudfoot, which contained a .38-caliber revolver, additional .38-caliber ammunition, .357-caliber ammunition, a .40-caliber Hi-Point magazine, and other narcotics paraphernalia, including digital scales and plastic baggies.  Id.  After learning that Proudfoot's Chrysler had been towed to a different location, authorities executed a second search warrant to seize the vehicle.  Id. ¶ 11.  Using the keys recovered earlier, authorities examined the contents of the Chrysler and recovered a bulletproof vest, a .40-caliber Hi-Point handgun, another scale, and several red and blue pills.  Id.

The Bureau of Criminal Apprehension ("BCA") later determined that the seized substance was just under 8 grams of actual methamphetamine.  Id. ¶ 13.  The BCA also determined that Proudfoot's DNA profile matched the DNA profile developed from two of the three baggies that were randomly analyzed, as well as the cylinder of the .38-caliber handgun.  Id. ¶ 12.  Proudfoot's DNA could not be excluded as a possible contributor from the DNA profile developed from the bulletproof vest and from the slide and trigger of the .40-caliber Hi-Point handgun.  Id.

On June 9, 2014, Proudfoot was charged in an Indictment with one count of possession with intent to distribute 5 grams or more of actual methamphetamine, two counts of being a felon in possession of firearms and ammunition as an armed career criminal, and one count of being a felon in possession of body armor.  See Indictment [Docket No. 1].  An Information [Docket No.

47] filed under 21 U.S.C. § 851(a) certified one of Proudfoot's prior felony convictions. On September 4, 2014, Proudfoot pled guilty to Counts 1 and 4 of the Indictment pursuant to a plea agreement.

The PSR found that Proudfoot had been previously convicted of at least two prior felonies of either a crime of violence or a controlled substance offense. PSR ¶ 3. These convictions were: 1) third degree burglary, 2) fleeing police in a motor vehicle, 3) conspiracy to commit second degree burglary, 4) second degree sale of a controlled substance, and 5) fifth degree sale of a controlled substance. Id. ¶ 38. The PSR concluded that Proudfoot was a career-offender. Id. ¶ 65.

Prior to sentencing, Proudfoot did not challenge the career-offender designation. On February 6, 2015, Proudfoot was sentenced to 202 months imprisonment for count 1 and 60 months imprisonment for count 4, running concurrently. See Docket No. 63. The sentence was a 5 year downward variance from the applicable guideline range. On January 28, 2016, Proudfoot filed this 2255 Motion.

### III. DISCUSSION

28 U.S.C. § 2255 provides a person in federal custody with a limited opportunity to collaterally attack the constitutionality, jurisdictional basis, or legality of his sentence. See United States v. Addonizio, 442 U.S. 178, 185 (1979). Relief is reserved for violations of constitutional rights and for a narrow range of injuries which were outside a direct appeal and which, if untreated, would result in a miscarriage of justice. See Poor Thunder v. United States, 810 F.2d 817, 821-22 (8th Cir. 1987). "While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations

3

during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" Voytik v. United States, 778 F.2d 1306, 1308 (8th Cir. 1985) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

**A. Cognizability**

The Government first contends that Proudfoot's collateral attack on the application of the career-offender guidelines is not cognizable under § 2255. In response, Proudfoot argues his counsel's ineffectiveness led to the due process violation, and that his counsel's calculation errors anchor his claim that he received ineffective assistance of counsel. Proudfoot thus "challenges his conviction on the very Constitutional basis of effective assistance of counsel as guaranteed by the Sixth Amendment." Reply [Docket No. 85] at 4.

The Government correctly asserts "that ordinary questions of guideline interpretation falling short of the miscarriage of justice standard do not present a proper section 2255 claim." Sun Bear v. United States, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (quoting Auman v. United States, 67 F.3d 157, 161 (8th Cir. 1995) (quotation marks omitted)). Ineffective assistance of counsel claims in federal criminal cases, comparatively, are properly asserted on collateral review, rather than on direct appeal. Massaro v. United States, 538 U.S. 500, 509 (2003). Therefore, Proudfoot's 2255 Motion will be reviewed as an ineffective assistance of counsel claim for trial court counsel's failure to challenge Proudfoot's career-offender designation.

**B. Ineffective Assistance of Counsel**

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to have assistance of counsel at all critical phases of the criminal proceedings, including

4

sentencing.  Gardner v. Florida, 430 U.S. 349, 358 (1977).  "Normally, in order to succeed on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense."  Sweeney v. United States, 766 F.3d 857, 859 (8th Cir. 2014) (quotation marks omitted).  "Deficient performance" is performance that falls below an objective standard of reasonableness.  Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012).  To show prejudice, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 694 (1984).

Proudfoot contends his counsel's failure to challenge his career-offender determination deprived him of effective assistance of counsel.  Section 4B1.1 of the United States Sentencing Guidelines provides that a criminal defendant is a career-offender if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. §4B1.1(a).  A "crime of violence" is a federal or state offense punishable by imprisonment for more than one year that "has as an element the use, attempted use, or threatened use of physical force against the person of another," or "is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  Id. §4B1.2(a)(1)–(2).  A "controlled substance offense" is a federal or state offense punishable by imprisonment for more than one year that "prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a

counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." Id. §4B1.2(b).

At the time of sentencing, the PSR concluded that Proudfoot had been convicted of at least two prior felonies that were either a "crimes of violence" or a "controlled substance offense." PSR ¶ 38. Those offenses were third degree burglary, fleeing police in a motor vehicle, conspiracy to commit second degree burglary, second degree sale of a controlled substance, and fifth degree sale of a controlled substance. Id. The Government concedes that Proudfoot's second degree sale of a controlled substance conviction was erroneously determined to be a predicate offense. Response [Docket No. 82] at 18. Proudfoot does not contest the Government's assertion that his prior conviction for fifth-degree sale of a controlled substance qualifies as a career-offender predicate conviction. Reply at 8.

Proudfoot's counsel's failure to challenge the PSR's determination that Proudfoot's November 8, 2004 conviction of conspiracy to commit second degree burglary qualified as a predicate career-offender offense does not sustain Proudfoot's ineffective assistance of counsel claim. The Sentencing Guidelines in effect at that time provided that "burglary of a dwelling" is a "crime of violence." U.S.S.G. §4B1.2(a)(2). When Proudfoot committed his conspiracy offense, second degree burglary was a "crime of violence" for career-offender purposes. See United States v. LeGrand, 468 F.3d 1077, 1081–82 (8th Cir. 2006) (holding that third degree burglary is a crime of violence). Importantly, the Sentencing Guidelines' commentary states that crimes of violence "include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." U.S.S.G. §4B1.2(a)(2) cmt. n.1 (emphasis added). Since the commentary to the Sentencing Guidelines is binding authority, even though Proudfoot was

convicted of conspiracy, rather than the actual offense, this conviction still qualifies as a predicate offense. See United States v. Mooney, 425 F.3d 1093, 1100–01 (8th Cir. 2005) (noting that the commentary is "an authoritative guide to the meaning of the guideline" and the "failure to follow interpretative and explanatory commentary could result in reversible error").

Moreover, when Proudfoot was sentenced, his conviction for fleeing police in a motor vehicle was correctly classified as a crime of violence under the so-called "residual clause" of the Armed Career Criminal Act.[2] United States v. Pate, 754 F.3d 550, 555–56 (8th Cir. 2014). Although the Supreme Court later decided in Johnson v. United States, 135 S.Ct. 2251 (2015), that the residual clause is unconstitutionally vague, hindsight, as the saying goes, is 20-20, and counsel's failure to anticipate changes in the law cannot be said to be deficient representation.[3] See Ragland v. United States, 756 F.3d 597, 601 (8th Cir. 2014) ("Our cases make clear that counsel's failure to anticipate a change in the law does not constitute ineffective assistance.") (quotation marks omitted).

At the time Proudfoot was sentenced, Eighth Circuit precedent was settled that at least

---

[2] The "residual clause" of the Armed Career Criminal Act defines as a crime of violence an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." Johnson v. United States, 135 S.Ct. 2251, 2555–56 (2015). The identical "residual clause" is also found in the career-offender's definition of a "crime of violence." U.S.S.G. §4B1.2(a)(2).

[3] Proudfoot notes that the Sentencing Commission has recently voted to amend the Sentencing Guidelines to eliminate the "residual clause" of the "crime of violence" definition. See Amendment to the Sentencing Guidelines (eff. Aug. 1, 2016), available at http://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20160121_RF.pdf (last visited May 24, 2016). That the Sentencing Guidelines are now being amended does not sustain Proudfoot's ineffective assistance of counsel argument because sentencing courts are directed to apply the Sentencing Guidelines that were in effect at the time of the defendant's offense. United States v. Roberts, 747 F.3d 990, 991–92 (8th Cir. 2014).

two of Proudfoot's prior convictions qualified as career-offender predicate offenses. His counsel's failure to challenge that designation in light of the accepted law at the time does not fall below an objective standard of reasonableness.[4] Lafler, 132 S.Ct. at 1384.

## IV. CERTIFICATE OF APPEALABILITY

The Court may grant a certificate of appealability only where a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Tiedeman v. Benson, 122 F.3d 518, 523 (8th Cir. 1997). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). The Court finds it unlikely that another court would decide the issues raised in this 2255 Motion differently, or that any of the issues raised in Proudfoot's petition would be debatable among reasonable jurists. Thus, the Court declines to grant a certificate of appealability.

---

[4] Proudfoot also argues that "Johnson was clearly on approach to land in Proudfoot's favor, not long after his sentencing . . . . Perhaps even a simple request for a continuance based upon Johnson could have prevented this manifest miscarriage of justice." Reply at 8. While Johnson ultimately did resolve in a defendant's favor, the failure of his attorney to anticipate this result does not mean his representation violated Sixth Amendment rights. This is especially true since Proudfoot was sentenced in February 2015 and Johnson was not decided until June of 2015.

CASE 0:14-cr-00192-ADM-LIB   Document 86   Filed 05/27/16   Page 9 of 9

## V.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Joshua M. Proudfoot's pro se Motion to Vacate under 28 U.S.C. § 2255 [Docket No. 75] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  May 27, 2016.